Chapple v. Wausau Papers of NH          CV-95-223-SD   03/25/96

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Walter Chapple;
Patricia Chapple

    v.                                          Civil No. 95-223-SD

Wausau Papers of New Hampshire, Inc.


O R D E R


In this civil action, plaintiff Walter Chapple charges defendant Wausau Papers of New Hampshire, Inc., with discriminatory practices in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101, et seq. Additional recovery is sought on state-law grounds for the intentional and/or reckless infliction of severe emotional distress. Plaintiff Patricia Chapple asserts a claim for loss of consortium.

Presently before the court is defendant's motion to dismiss, to which plaintiffs have filed an objection and defendant has replied thereto.[1]

_____

[1]Also pending before the court is defendant's Motion for Protective Order, the disposition of which will be addressed infra.

<u>Background</u>

Plaintiff Walter Chapple has spent the better part of twenty-one years working in a Groveton, New Hampshire, paper mill, first for Diamond International and subsequently for James River Paper Company, Inc.  Amended Complaint ¶ 9.  Defendant Wausau Papers of New Hampshire, Inc., is a foreign corporation having its principal place of business in Wausau, Wisconsin, and licensed to do business in New Hampshire.  <u>Id.</u> ¶ 2.  Wausau Papers purchased the Groveton mill from James River on April 1, 1993.  <u>Id.</u> ¶ 16.

Due to three work-related injuries to his back, Chapple alleges a 15 percent total body disability.  <u>Id.</u> ¶ 10.  He maintains that James River created his filter plant operator position following the back injury "in order to accommodate [any] physical limitations . . . ."  <u>Id.</u> ¶ 9.

On February 21, 1993,[2] while still employed by James River, plaintiff was laid off from his position due to, inter alia, an alleged "slowdown in the economy . . . ."  <u>Id.</u>  Plaintiff asserts

_____

[2]It is unclear to the court on precisely what date plaintiff was laid off.  His amended complaint references February 12, 1993, Amended Complaint ¶ 16, February 21, 1993, <u>id.</u> ¶¶ 9, 10, and February 1993 generally, <u>id.</u> ¶ 29.  The charges of discrimination filed by Bruce Poole on plaintiff's behalf likewise speak in generalities, placing the lay-off in February 1993.  A precise date being immaterial to the disposition of the instant motion, the court will consider the lay-off as having occurred on February 21, 1993.

that his lay-off was a measure designed "to allow defendant Wausau Papers . . . to purchase a business that had a limited number of disabled workers." Id. ¶ 16. In May 1993, after attempting to apply for a job with Wausau Papers, both regional and local representatives of plaintiff's union[3] are alleged to have advised "that he would likely not be called back to Wausau Papers of New Hampshire, Inc. [as an] employee as it was Wausau's policy not to hire anyone with a physical restriction." Id. ¶ 20.

Plaintiff further alleges that his prior position became available in May 1994, but he did not become informed of this vacancy until June 1994. Id. ¶ 21. Chapple asserts that he never submitted a written application for employment with Wausau Papers between May 1993 and June 1994 because, based on what he had been told, "it would have been a futile gesture for him to do so." Id.

Rather, with the assistance of Bruce Poole, plaintiff filed a charge of discrimination directly with the Equal Employment Opportunity Commission (EEOC) on August 28, 1994. Affidavit of Bruce Poole ¶ 3 (attached to Plaintiff's Objection). Such charge was denied by EEOC as untimely filed. Id. ¶ 4. A second charge

_____

[3]At all times since 1971, plaintiff has been a dues-paying member of the United Paperworkers' International Union. Amended Complaint ¶ 9.

3

to the EEOC resulted in a January 31, 1995, Notice of Right to Sue letter indicating that the EEOC was not conducting an investigation of the claim due to its untimeliness.  See Notice of Right to Sue (attached to Defendant's Motion to Dismiss).  Plaintiff thereafter timely filed his complaint in this court on April 29, 1995.[4]

## Discussion

As previously acknowledged by both the plaintiff, see Aug. 28, 1994, and Dec. 10, 1994, letter-charge to EEOC, and the EEOC, see Oct. 21, 1994, letter from Robert L. Sanders, EEOC Area Director, to Bruce Poole, and Jan. 31, 1995, Notice of Right to Sue, Chapple's discrimination charges were filed more than 300 days subsequent to his February 1993 job lay-off.[5]  Indeed, in

---

[4]The court notes defendant's argument concerning the timeliness of plaintiffs' complaint vis-à-vis the amended complaint, but finds such argument unpersuasive.

[5]The filing deadline in New Hampshire, being a deferral state, is 300 days, rather than the standard 180 days.  See, e.g., Johnson v. General Elec., 840 F.2d 132, 133 (1st Cir. 1988) (complainant in a deferral state "must file his charges with the EEOC within 240 days of the alleged violation, in order to allow 60 days for deferral to the state agency") (citing Mohasco Corp. v. Silver, 447 U.S. 807, 817 (1980); Cajigas v. Banco de Ponce, 741 F.2d 464, 467 & n.8 (1st Cir. 1984)).  Whether 180 days or 300 days is the appropriate filing period is immaterial if, as plaintiff asserts, the operative discriminatory act occurred in May/June 1994.  As such, the court will employ the longer of the two periods in disposing of the instant motion.  See infra note 6 (discussing operative filing period in deferral states).

4

the EEOC Notice of Charge of Discrimination sent to Wausau Papers on January 26, 1995, the date of the alleged violation, both the earliest and most recent, is identified as February 1, 1993. Any claims against James River are, therefore, clearly barred as untimely.

The case against Wausau Papers, however, is more intricate. Although plaintiff remained a member of the union from whose ranks Wausau Papers drew their workforce, he was never a Wausau Papers employee. The ADA, however, prohibits discrimination against qualified individuals "in regard to job application procedures, [and] hiring," 42 U.S.C. § 12112(a) (emphasis added), as well as "advancement, or discharge . . . .," id. Thus, the events of May/June 1994 may constitute the requisite discriminatory act occurring less than 300 days prior to the charge of discrimination.

The state of the evidence before the court is, to put it gently, a jumble. Three "To Whom It May Concern" letters written by Mr. Poole on Chapple's behalf are before the court.[6] One is

---

[6]The court notes that all such letters appear to have been sent directly to the EEOC, and not to the local agency, the New Hampshire Commission for Human Rights (NHCHR). Whether this action simultaneously initiated NHCHR review, and thus entitles plaintiff to the longer filing period, is a matter the court declines to reach as not properly before it. Cf. EEOC v. Green, 76 F.3d 19, 23 (1st Cir. 1996) ("worksharing agreements [between EEOC and state agencies] can permit state proceedings to be automatically initiated when the EEOC receives the charge")

undated, although Mr. Poole's affidavit ascribes to it the date August 28, 1994. See Poole Affidavit ¶ 3. This letter identifies Wausau Papers as the discriminatory actor. A similar letter, dated December 10, 1994, was delivered to the EEOC, again asserting a charge of discrimination against Wausau Papers.[7] A third letter, dated December 10, 1994, was filed with the EEOC on Chapple's behalf, this time asserting a discrimination claim against his labor union. See December 10, 1994, letter (attached to Defendant's Motion). In all three letters, the "facts" portion of each is, for all practical purposes, identical.

Because resolution of the instant motion will require resort to matters contained outside the pleadings, the court herewith converts such motion into one for summary judgment. See Rule 12(b), Fed. R. Civ. P.[8] The parties shall have forty-five (45)

---

(interpreting Massachusetts discrimination regime).

[7]The court characterizes this letter as "similar" due to the fact that a fifth ground, over and above the four contained in the August 28 letter, is asserted for extending the filing deadline in Mr. Chapple's case.

[8]Such Rule states, in pertinent part,

> If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent

days from the date of this order to conduct whatever discovery they deem necessary to properly advance or oppose such a motion. Defendant shall have an additional fourteen (14) days thereafter to supplement either the briefing or the evidence before the court in support of its motion. Plaintiffs shall respond according to the time constraints contemplated by the local rules, i.e., thirty (30) days from the date defendant's supplemental brief is filed. See Local Rule 7.1(b).[9]

### Conclusion

For the reasons set forth herein, the court converts, without ruling upon, defendant's motion to dismiss (document 10) into one for summary judgment. Discovery as to such motion shall be completed by May 9, 1996. Defendant's supplemental briefs are due by 4:30 p.m. on May 23, 1996, with plaintiffs' supplemental opposition due thirty days thereafter. Accordingly, the motion for protective order (document 15) is denied.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

March 25, 1996

_____

to such a motion by Rule 56.

[9]Insofar as further discovery is ordered herein, defendant's motion for protective order is herewith denied.

cc:   Peter J. Duffy, Esq.
       James L. Kruse, Esq.